IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEBORAH EASOM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:12-cv-1289-N-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Deborah Easom seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision should be affirmed in all respects.

**Background**

Plaintiff alleges that she is disabled as a result of major depressive order and high blood pressure. After applications for disability and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on September 29, 2010. At the time of the hearing, Plaintiff was 52 years old. She has a limited education and past work experience as a fast food worker and pie maker. Plaintiff has not engaged in substantial gainful activity since June 5, 2009.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that Plaintiff

suffered severe impairments from major depressive disorder and posttraumatic stress disorder, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: understanding, remembering, and carrying out simple, one-to-two-step instructions and interaction with coworkers and the public must be incidental to the work performed. The ALJ determined that Plaintiff could not return to her past relevant employment. Relying on the testimony of a vocational expert, the ALJ found that Plaintiff was capable of working as a nut and bolt assembler, laundry worker – domestic, and stuffing machine operator, which are jobs that exist in significant numbers in the national economy. Given her age, education, and exertional capacity for all levels of work with certain non-exertional restrictions, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines.

Plaintiff appealed that decision to the Appeals Council. The Council denied Plaintiff's request for review, and the ALJ's decision became final.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision on three grounds: (1) the ALJ failed to consider all of Plaintiff's severe impairments; (2) the ALJ relied on unreliable vocational expert testimony; and (3) the ALJ failed to analyze whether Plaintiff could maintain work.

The undersigned recommends that the hearing decision should be affirmed in all respects.

## Legal standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo. Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *see also Cook v. Heckler,* 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the

burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id*. However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows where the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*

*v. Chater*, 67 F.3d 552, 557 n.22 (5th Cir. 1995). Put another way, Plaintiff "must show that [she] could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

### The ALJ's Non-Findings of Severe Impairments

Plaintiff first contends that the ALJ failed to consider all of Plaintiff's severe impairments. Specifically, Plaintiff argues that the ALJ's failure to find that her anxiety disorder, panic attacks, obesity, and hypertension with edema were severe impairments was an error of law and not based upon the record as a whole. *See* Dkt. No. 17 at 8. Relying on *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), Plaintiff asserts that, because the ALJ did not make findings as to whether Plaintiff's anxiety disorder, panic attacks, obesity, and hypertension with edema were severe, "it must be assumed the impairments were by inference considered non-severe." Dkt. No. 17 at 9.

In *Stone*, the Fifth Circuit, concerned that the Commissioner had been applying an incorrect standard to the severity requirement when determining impairments, held that

> we will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 1520(c) (1984) is used. Unless the correct standard is used, the claim must be remained to the Secretary for reconsideration.

752 F.2d at 1106. The *Stone* standard provides that "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the

individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101. In the instant case, the ALJ cited to the *Stone* decision and explained that "claimant's impairments cause more than minimal functional limitations, and can be expected to interfere with the ability to work." Dkt. No. 14-2 at 15.

As an initial matter, Plaintiff does not take issue with the ALJ's statement of the severity standard. *See* Dkt. No. 17 at 9. However, the undersigned notes that decisions of judges in this district have held that an ALJ failed to fulfill the ALJ's obligations under *Stone* and that remand was required in cases using the same language that the ALJ used in the instant case or similar language. *See, e.g.*, *Moran v. Comm'r of Soc. Sec. Admin.*, No. 3:11-cv-949-N-BF, 2012 WL 2864520, at *6-*7 (N.D. Tex. May 22, 2012) ("Unlike the standard that the ALJ applied, *Stone* provides no allowance for minimal interference on a claimant's ability to work."), *rec. adopted*, 2012 WL 2864493 (N.D. Tex. July 12, 2012). Other decisions of judges in this district, however, support a conclusion that the ALJ here demonstrated, pursuant to *Stone*, that she recognized and applied the proper standard for a "severe impairment" in the Fifth Circuit. *See Sinayi v. Astrue*, No. 3:11-cv-2770-D, 2012 WL 3234414, at *3 (N.D. Tex. Aug. 9, 2012) ("In this case, the ALJ applied the following standard: '[a]n impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.' R. 11; see also R. 13 ('[W]hile the claimant may have some depression, it does not cause more than

minimal limitation in his ability to perform basic mental work activities and as a result, is not severe.'). This standard is equivalent to the standard set forth in *Stone* because, although *Stone* refers to a 'minimal effect on the individual,' both *Stone* and the standard used by the ALJ define a non-severe impairment as one that has only a minimal effect on an individual's ability to work."); *Warren v. Astrue*, No. 4:10-cv-98-A, 2011 WL 4526092, at *3 (N.D. Tex. Sept. 29, 2011) (explaining, in a case in which the ALJ cited to *Stone* and the regulations and "defined 'severe' as medically determinable impairments that 'have *more than a minimal effect* on a claimant's ability to perform activities of daily life or basic work activities,'" that, "[w]hereas *Stone* defined when impairments did *not* qualify as severe, the ALJ defined when impairments *did* qualify as severe; the former is the definition in the negative and the latter the definition in the affirmative."). In any event, even if the ALJ's formulation of the severity standard is at odds with *Stone*'s statement of the correct standard, remand is not required here for the reasons explained below.

  Plaintiff contends that, because the ALJ did not consider whether Plaintiff's anxiety disorder, panic attacks, obesity, and hypertension with edema were severe impairments at step 2 of the sequential analysis, "the remainder of the ALJ's findings of fact were also tainted from the error." Dkt. No. 17 at 9. This is not the law. Remand is not warranted when, even where the ALJ did not explicitly determine the severity of certain impairments, the ALJ proceeded to later steps of the analysis. *See Herrera v. Astrue*, 406 F. App'x 899, 903 (5th Cir. 2010) (declining to remand where "case did not turn on a finding that [plaintiff's] impairments were not severe at step two");

*Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (ALJ's failure to make a severity finding at step two not a basis for remand where ALJ proceeded to later steps of the analysis); *see also Mays v. Bowen*, 837 F.2d 1362, 1365 (5th Cir. 1988) (per curiam) ("[I]f the ALJ proceeds past the impairment step in the sequential evaluation process the court must infer that a severe impairment was found.").

In this case, the ALJ determined that Plaintiff's major depressive disorder and posttraumatic stress disorder were severe impairments. *See* Dkt. No. 14-2 at 14. The ALJ discussed Plaintiff's anxiety disorder and panic attacks at length, and it is apparent to the undersigned that the ALJ considered these particular issues to be subsumed within Plaintiff's major depressive disorder and posttraumatic stress disorder. *See, e.g.*, *id.* at 18 ("The medical evidence of record reflects that the claimant does have difficulty handling stress and being around people. The claimant continues to complain of depression, panic attacks in crowds...."). Indeed, the ALJ specifically incorporated Plaintiff's limitations stemming from her panic attacks into her RFC recommendation. *See id.* at 19 ("Due to her anxiety around people, interaction with coworkers and the public must be incidental [to] the work performed."). Even Plaintiff, at the administrative level, appeared to characterize her anxiety and panic attacks as part of her depression. In Plaintiff's opening statement at the hearing, counsel stated that Plaintiff was "alleging disability due to major depressive disorder and high blood pressure." *Id.* at 28. And, as Defendant points out, Plaintiff was diagnosed with "major depressive disorder," Dkt. No. 14-8 at 328, "depression with anxiety," and "severe anxiety and depression," Dkt. No. 14-7 at 205-06, 209.

Therefore, the record reflects that the ALJ properly considered Plaintiff's anxiety disorder and panic attacks in her RFC analysis. As such, the ALJ's failure to expressly deem Plaintiff's anxiety disorder and panic attacks as "severe impairments" does not require remand. *See Herrera*, 406 F. App'x at 903; *Adams*, 833 F.2d at 512.

With regard to obesity, Plaintiff's assertion that "there was no discussion or analysis of whether or not Plaintiff's ... obesity ... [was a] severe impairment[]" is simply inaccurate. Dkt. No. 17 at 9. To the contrary, the ALJ discussed Plaintiff's obesity at length and determined that "[t]here is no evidence to support a finding that the claimant's obesity causes any exertional limitations." Dkt. No. 14-2 at 19. The fact that the ALJ performed the analysis when making her RFC determination, rather than at step 2, is inconsequential. Further, even if the ALJ's statement of the severity standard could be considered error, the Fifth Circuit has recently made clear that harmless error analysis applies to "any error by the ALJ in not following the procedures set out in *Stone*" and that remand is not warranted where "substantial evidence supports the finding of the non-severity." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).

Here, the ALJ based her determination on the fact that claimant did not allege, and the treating notes did not indicate, that Plaintiff has <u>any</u> limitations associated with her obesity. *See* Dkt. No. 14-2 at 19 ("There is no evidence to support a finding that the claimant's obesity causes any exertional limitations."). Nothing in the record, nor anything in Plaintiff's brief, suggests that Plaintiff's obesity limits her ability to work – as required by *Stone* to find a severe impairment, that is, one that could be

-10-

expected to interfere with the individual's ability to work. Indeed, at the hearing, Plaintiff did not allege that obesity was a basis for her disability. *See id.* at 28. As such, the ALJ did not reversibly err in failing to make a determination as to whether obesity was a severe impairment, particularly where the ALJ specifically considered the effects of obesity upon Plaintiff's ability to function in accordance with Social Security Ruling ("SSR") 02-1p, *see id.* at 19, and where substantial evidence supports the implied finding of the non-severity, *see Taylor*, 706 F.3d at 603.

Finally, Plaintiff is correct in her assertion that the ALJ did not discuss Plaintiff's hypertension with edema. Because Plaintiff did allege disability due to high blood pressure, the ALJ should have discussed whether Plaintiff's hypertension was a severe impairment. However, both at the administrative level and before this Court, Plaintiff has pointed to no evidence indicating that her alleged hypertension with edema affected her ability to work. Plaintiff argues that she was overweight and had been to the hospital with complaints of hypertension and lower extremity edema. *See* Dkt. No. 17 at 12-13. But the mere mention of an impairment in the medical record does not establish that Plaintiff is disabled. *See Hames v. Harper*, 707 F.2d 162, 165 (5th Cir. 1983). Even the mere presence of diagnosis of an impairment – without more – is not sufficient to establish a severe impairment or a disability. *See id.* Rather, Plaintiff must show that she is so functionally impaired by the impairment that she is precluded from engaging in any substantial gainful activity. *See id.*; *accord Taylor*, 706 F.3d at 603.

Here, Plaintiff could point to no evidence, and a review of the record reveals no evidence, that these complaints had <u>any</u> effect on Plaintiff's ability to work – as is required to find severity under *Stone*. *See Domingue v. Barnhart*, 388 F.3d 462, 463 (5th Cir. 2004) (remand not required where ALJ's decision supported by substantial evidence); *Shave v. Apfel*, 238 F.3d 592, 596 (5th Cir. 2001) (no evidence that an alleged impairment precluded employment). As such, even if the ALJ's statement of the *Stone* standard <u>and</u> the ALJ's failure to make a finding regarding as to the severity of Plaintiff's hypertension with edema are erroneous, the error is harmless. "[P]rocedural perfection is not required unless it affects the substantial rights of a party." *Taylor*, 706 F.3d at 603. Had the ALJ expressly found that this condition is not severe, and done so based on a standard at odds with *Stone*, on the record in this case, substantial evidence would support that finding of non-severity even under the *Stone* standard. *See Taylor*, 706 F.3d at 603. Accordingly, Plaintiff cannot show prejudice, and remand is not warranted.

<u>The Vocational Expert's Testimony</u>

Plaintiff next argues that the vocational expert's testimony, on which the ALJ relied, was unreliable for two reasons.

First, Plaintiff asserts that the vocational expert testimony contradicted SSR 85-15 and SSR 96-9p. SSR 85-15 and SSR 96-9p both essentially provide that a "substantial loss of ability" to meet any one of several basic work-related activities would justify a finding of disability. The work activities described included the ability: to understand, remember, and carry out simple instructions; to make judgments that

are commensurate with the functions of unskilled work; to respond appropriately to supervision, co-workers, and usual work situations; and to deal with changes in a routine work setting.

At the hearing, Plaintiff's then-counsel asked the vocational expert if Plaintiff would be able to perform the jobs identified if Plaintiff's "ability to respond appropriately to supervision, co-workers and usual work situations was markedly limited and their ability to deal with changes in a routine work setting." Dkt. No. 14-2 at 57. The vocational expert responded that Plaintiff would still be able to perform the three jobs identified. *See id.* Upon questioning, the vocational expert acknowledged that she was not familiar with the SSRs that state what basic work-related activities are needed to sustain work on a regular basis. *See id.* at 58.

The Fifth Circuit has stressed the value of vocational expert testimony and has held that "[t]he value of a vocational expert is that [she] is familiar with the specific requirements of a particular occupation, including the working conditions and the attributes and skills needed." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986). The fact that the vocational expert was unfamiliar with particular SSRs does not rise to the level necessary to undermine her opinion. *Cf. Owens v. Astrue*, No. 2:05-cv-95-J-BB, 2008 WL 763073, at *10 (N.D. Tex. Mar. 21, 2008) ("Plaintiff challenges the VE's veracity based upon the VE's alleged inability to articulate for the ALJ the proper description and/or duties of a surveillance systems monitor and his calculation of the number of such jobs in Texas. These allegations do not rise to the level necessary to undermine the VE opinion.").

However, it appears that the vocational expert's answer to the hypothetical posed by Plaintiff's hearing counsel was inconsistent with the SSRs and therefore may have been incorrect. Nevertheless, any such error is harmless. The hypothetical asked the vocational expert to assume that Plaintiff's limitations in her ability to perform the basic work related activities was "marked." *See* Dkt. No. 14-2 at 57. The ALJ, on the other hand, determined that Plaintiff's limitations in performing such activities was "mild" or "moderate." *See id.* at 19. As such, any error the vocational expert made in answering Plaintiff's counsel's hypothetical was clearly inconsequential, as the ALJ did not rely on it.

Second, Plaintiff asserts that the ALJ failed to ask the vocational expert whether her testimony was in conflict with the *Dictionary of Occupational Titles* (the "DOT"). *See* Dkt. No. 17 at 15-16. However, the ALJ did in fact ask the vocational expert if her testimony was consistent with the DOT. *See* Dkt. No. 14-2 at 57 ("And is your testimony consistent with the DOT?"). The vocational expert answered in the affirmative. *See id.* And Plaintiff mixes apples and oranges when Plaintiff points to the vocational expert's response that she was not familiar with the SSRs that state what basic work-related activities are needed to sustain work on a regular basis and, from this, Plaintiff suggests that there is some basis to doubt that the VE was familiar with the DOT. *See* Dkt. No. 17 at 16 (omitting part of Plaintiff's attorney's question when citing Dkt. No. 14-2 at 58 as "Are you familiar with Social Security rulings.... No, I'm not." and then asking, rhetorically: "If the VE was not familiar with the Social Security

Rulings, how would the VE even know if his testimony was consistent with the *Dictionary of Occupational Titles*?").

Plaintiff also asserts that the vocational expert's testimony violated "the essence" of SSR 00-4p because the vocational expert was not familiar with SSR 85-15 and SSR 96-9p. *See id.* SSR 00-4p "provides that adjudicators should identify and obtain an explanation for any conflicts between the VE's evidence and the [DOT], and explain in their decision how any identified conflicts were resolved." *Barratt v. Astrue*, No. 07-51067, 2008 WL 2325636, at *2 n.1 (5th Cir. June 6, 2008). But, as indicated by Plaintiff's invocation of SSR 00-4p's "essence," Plaintiff has not identified a conflict between the VE's evidence and the DOT. And Plaintiff points to no case law, and the undersigned is aware of no case law in the Fifth Circuit, that requires remand where the vocational expert was unfamiliar with particular SSRs. More importantly, as already discussed at length, Plaintiff can show no prejudice from the fact that the vocational expert was unfamiliar with SSR 85-15 and SSR 96-9p. *Cf. id.* (applying harmless error analysis to alleged error based on SSR 00-4p).

<u>Plaintiff's Ability to Maintain Employment</u>

Plaintiff argues that the ALJ erred in not determining whether she retains the ability to maintain employment under *Watson v. Barnhart*, 288 F.3d 212 (5th Cir.2002), because she is unable to perform certain basic work activities.

In *Watson*, the Fifth Circuit held that the ALJ erred by failing to determine whether the plaintiff was capable not only of obtaining but also maintaining employment. 288 F.3d at 218. The RFC rules (20 C.F.R. § 404.1545) and a Social

-15-

Security Ruling (SSR 96–8p (1996)) both make clear that the RFC is a measure of the plaintiff's capacity to perform work "on a regular and continuing basis," and in most cases the ability to maintain employment is adequately taken into account in the RFC determination. *See, e.g.*, *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005); *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). The Fifth Circuit has clearly rejected the idea that an ALJ must in all cases make a separate finding that the claimant has the ability to maintain employment. *See Frank*, 326 F.3d at 619. Any such required extra finding must be predicated on the claimant having an impairment that waxes and wanes in its manifestation of disabling symptoms. *See Dunbar v. Barnhart*, 330 F.3d 670, 671 (5th Cir. 2003); *Frank*, 326 F.3d at 619.

The Court of Appeals in *Frank* explained that "*Watson* requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Frank*, 326 F.3d at 619. *Frank* gave an example of evidence that might necessitate a separate finding of a claimant's ability to maintain employment: "For example, if [the Plaintiff] had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination." *Id.*

In *Perez*, the Fifth Circuit also found that the plaintiff's evidence of "waxing and waning" disability did not rise to the level of impairment required by *Watson*. 415 F.3d at 465. The plaintiff claimed that his "pain would vary in intensity or 'wax and wane' between injections;" he had "good days and bad days;" and his expert witness testified

that "he knew Mr. Perez and it was his professional opinion that Mr. Perez would not be able to work a 30 hour week on a reliable basis." *Id.* at 465-66. The Court of Appeals found that these assertions were not sufficient to bring Perez's case within the scope of *Frank*. *Id.* at 465. The panel further remarked that "[i]t is axiomatic that the pain from any type of ailment will vary in intensity, especially the farther one gets from treatment that alleviates pain." *Id.*

The Fifth Circuit held in *Dunbar* that, "absent evidence that a claimant's ability to maintain employment would be compromised despite his ability to perform employment as an initial matter, or an indication that the ALJ did not appreciate that an ability to perform work on a regular and continuing basis is inherent in the definition of RFC [residual functional capacity]," a separate finding regarding an ability to maintain employment is not required. 330 F.3d at 671.

Plaintiff has not identified or demonstrated the existence of "waxing and waning" symptoms that would satisfy the *Frank* and *Watson* standard. Rather, Plaintiff relies on *Watson* – while ignoring *Frank, Perez,* and *Dunbar*, which clarify and explain *Watson* – for the incorrect proposition that Plaintiff's non-exertional limitations by their nature require a specific finding by the ALJ as to whether Plaintiff has the ability to maintain employment.

The record does not suggest that Plaintiff's symptoms wax and wane; rather, like the plaintiff in *Frank*, Plaintiff contends that she cannot work at all. The evidence required by *Dunbar* – that the plaintiff could start working but could not continue, or

that the ALJ did not know that working on a regular and continuing basis is part of the RFC – is completely lacking here.

Finally, Plaintiff's statement that "the ALJ's RFC did not contain limitations regarding an inability to deal with stress, an inability to respond appropriately to supervision, co-workers, and usual work situations and an inability to respond appropriately to changes in a routine work setting" is incorrect. Dkt. No. 17 at 17. Rather, the ALJ specifically limited Plaintiff to "simple, one-to two-step instructions" and limited interaction with coworkers and the public. Dkt. No. 14-2 at 16. Contrary to Plaintiff's arguments, the ALJ found that "claimant does have difficulty handling stress and being around people." *Id.* at 18.

The ALJ did not err by omitting a *Watson* review.

**Recommendation**

The hearing decision should be affirmed in all respects.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure

to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 9, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE